UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| PHYLLIS AUBREY )<br>   )<br>   PLAINTIFF )<br>   ) CIVIL ACTION NO. 3:19-cv-892-DJH<br>v. )<br>   )<br>LOGISTICS AND TECHNOLOGY )<br>SERVICES, INC. )<br>   )<br>and )<br>   )<br>LOGISTICS SOLUTIONS )<br>GROUP, INC. )<br>   )<br>   DEFENDANTS ) | |

## COMPLAINT

### I. PARTIES

1. The Plaintiff, Phyllis Aubrey (hereinafter "Aubrey" or "Plaintiff"), is an Elizabethtown, Hardin County, Kentucky resident.

2. The Defendant, Logistics and Technology Services, Inc., (hereinafter "LTS" or "Defendant"), is a foreign corporation operating and conducting business in Fort Knox, Hardin County, Kentucky.

3. The Defendant, Logistics Solutions Group, Inc., (hereinafter "LSG" or "Defendant"), is a foreign corporation operating and conducting business in Fort Knox, Hardin County, Kentucky.

### II. JURISDICTION AND VENUE

4. This is an action for violations of the Americans with Disabilities Act ("ADA") pursuant to 42 USC §12101 et. seq.

5. This Court has original jurisdiction pursuant to the provisions of 42 USC §12101 et. seq.

6. Venue is proper in this district because the actions giving rise to this Complaint occurred in this judicial district. Further, Defendants, LTS and LSG, operate and conduct business within this judicial district.

### III. FACTUAL BACKGROUND

7. Aubrey is a former employee of LTS and LSG (collectively "the Defendants").

8. Aubrey was employed by the Defendants as a Travel Clerk II.

9. Aubrey began her employment with the Defendants on June 4, 2018 and was employed with the Defendants for approximately six (6) months.

10. At the time Aubrey was employed by the Defendants, LSG was a subcontractor of LTS. Specifically, LTS and LSG shared employees, and LSG was responsible for all of the transportation services and scheduling.

11. LTS is an "employer" within the meaning of the ADA, at all times relevant to this Complaint.

12. LSG is an "employer" within the meaning of the ADA, at all times relevant to this Complaint.

13. During the course of Aubrey's employment, she was never issued any performance, discipline, or attendance actions or "write-ups."

14. On approximately November 1, 2018, Defendants' Travel Supervisor, Della Thompson (hereinafter "Thompson") informed Aubrey that Defendants' Transportation Manager, Jarrett Gonsalves (hereinafter "Gonsalves") wanted to meet with her to discuss a new position for Aubrey.

15. On the same day, Aubrey, Thompson, and Gonsalves had a meeting, where Gonsalves informed Aubrey that her Travel Clerk II position would be ending in mid-December 2018, but that Defendants had a new Travel Clerk III position, which would be available. Specifically,

Gonsalves told Aubrey that Defendants wanted to keep her and offered Aubrey the position of Travel Clerk III.

16. On approximately November 6, 2018, Aubrey informed Gonsalves and Thompson that she accepted Defendants' offer for the Travel Clerk III position, which was a full-time position.

17. In mid-November 2018, Thompson emailed Aubrey and the Defendants' other Travel Clerk III, Leslie Bastian (hereinafter "Bastian"), stating that while Aubrey had been offered and accepted the new Travel Clerk III position, the Defendants requested that the information remain confidential for the time being.

18. On November 27, 2018, while working at Defendants, Aubrey began suffering from severe chest pains.

19. Aubrey informed Thompson of her chest pains, left work, and immediately went to the hospital to be examined.

20. Aubrey called Thompson that same night, November 27, 2018, to let Thompson know she was being hospitalized and monitored overnight until the doctors could determine her diagnosis.

21. On November 28, 2018, Aubrey was diagnosed with a heart block and informed by her physician that she would have to undergo surgery in order to install a pacemaker.

22. On November 29, 2018, Aubrey underwent surgery to have the pacemaker placed in her chest.

23. The following day, November 30, 2018, Aubrey was released from the hospital. Aubrey informed Thompson of her surgery and need to be off work.

24. On December 6, 2018, Aubrey had a follow-up appointment, where her physician ordered her to remain off work until January 15, 2019. [A copy of the doctor's note is attached hereto as Exhibit "1"].

25. Following the doctor's appointment, Aubrey emailed a copy of her doctor's note to Thompson and informed her that she was to remain off work until January 15, 2019.

26. On December 12, 2018, upon noticing that Defendants had posted the Travel Clerk III position, which Aubrey had previously been offered and accepted, on Indeed, Aubrey emailed Thompson to inquire about why the job had been posted online. [A copy of the email is attached hereto as Exhibit "2"].

27. Thompson called Aubrey and told her to come to the office the following day and to bring her CAC card and ID card since the Travel Clerk II position was ending on December 15, 2018.

28. On December 13, 2018, Aubrey went to the office and met with Thompson. Aubrey, aware that the Travel Clerk II position was ending on December 15, 2018, provided Thompson with her CAC card and ID card.

29. Additionally, Aubrey again asked Thompson why the Travel Clerk III position had been posted on Indeed, since it is the same job position that she had been offered and accepted the month prior.

30. Thompson responded that Aubrey needed to apply for the job position, although Thompson was aware that the position had already been offered by Gonsalves to Aubrey and accepted by her.

31. Following Thompson's instruction to Aubrey to apply for the job position that she had previously been offered and had accepted, Aubrey applied for the Travel Clerk III position on Indeed.

32. After applying for the Travel Clerk III position online, Thompson notified Aubrey that she would be interviewed for the position by Gonsalves and Thompson on January 2, 2019.

33. During the interview on January 2, 2019, Gonsalves repeatedly referred to Aubrey's "health" and made specific comments that he needed to fill the position with someone who could be there full-time and someone that he could depend on.

34. Aubrey assured Gonsalves that she would be available full-time and that he could depend on her once she was released on January 15, 2019, to which Gonsalves kept repeating "but your health" multiple times during the interview.

35. On January 3, 2019, Aubrey had a follow-up doctor's appointment, where her physician released her to return to work without any restrictions immediately and prior to the previous release date of January 15, 2019. Specifically, the doctor's note states, "Pt able to return to work from a cardiac standpoint." [A copy of the doctor's note is attached hereto as Exhibit "3"].

36. On January 4, 2019, Aubrey emailed Thompson to inquire about her job status for the Travel Clerk III position that Gonsalves had offered to her and that Aubrey had accepted in early November. Additionally, Aubrey expressed her concern to Thompson that "I don't think I'm going to get the job anyway because the way Mr. G kept talking about the home office being concerned about my health." [A copy of the emails between Aubrey and Thompson from December 4 and 7, 2019 are attached hereto as Exhibit "4"].

37. On January 7, 2019, Thompson emailed Aubrey back, but requested whether Aubrey had been released from her doctor. Aubrey responded that she had been released to return to work and attached her physician's release statement to Thompson. [Exhibit "4"].

38. On January 10, 2019, Thompson emailed Aubrey stating that Aubrey had not been selected for the Travel Clerk III position. Aubrey immediately emailed Thompson back, stating "I don't understand. I was offered the job before my health issue and now I didn't get it…. I knew in the

interview that I was not going to get it because Mr. G kept talking about my health." [A copy of the January 10, 2019 emails are attached hereto as Exhibit "5"].

39. Following her termination, Aubrey filed an EEOC Charge of Discrimination against LSG, case number 474-2019-00708 for disability discrimination on or around July 11, 2019. [A copy of Aubrey's EEOC Charge of Discrimination is attached hereto as Exhibit "6"].

40. Aubrey received her right to sue LSG letter from the EEOC on September 6, 2019. [A copy of Aubrey's Right to Sue LSG letter is attached hereto as Exhibit "7"].

41. Following her termination, Aubrey also filed an EEOC Charge of Discrimination against LTS, case number 474-2019-01409 for disability discrimination and retaliation on or around October 25, 2019. [A copy of Aubrey's EEOC Charge of Discrimination is attached hereto as Exhibit "8"].

42. Aubrey received her right to sue LTS letter from the EEOC on November 4, 2019. [A copy of Aubrey's Right to Sue letter is attached hereto as Exhibit "9"].

43. Thompson never responded to Aubrey's email and never informed Aubrey of a reason why she was not selected for the position.

44. Defendants terminated and/or failed to re-hire Aubrey based upon Aubrey's serious health condition.

45. Defendants terminated and/or failed to re-hire Aubrey due to LTS perceiving Aubrey as being disabled.

46. Aubrey's heart condition requiring the installation of a pacemaker constitutes a disability under the American with Disabilities Act ("ADA") pursuant to 42 USC §12102 et. seq.

47. Defendants failed to accommodate Aubrey's disability, discharged Aubrey, and failed to re-hire Aubrey based upon her disability.

48. Defendants were aware of Aubrey's disability prior to discharging her and/or failing to hire her.

49. Defendants perceived and regarded Aubrey as having a disability prior to discharging her and/or failing to hire her.

### III. CLAIMS AND CAUSES OF ACTION

#### COUNT I. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ DISCRIMINATION ON THE BASIS OF AN EMPLOYEE'S DISABILITY

50. Aubrey re-alleges all allegations contained in paragraphs 1 through 49 above as if fully set forth herein.

51. Defendants terminated Aubrey's employment and failed to re-hire Aubrey on the basis of a disability and/or a "perceived" disability and/or a "regarded as" disability in violation of 42 USC §12101 et. seq.

52. As a result of Defendants' violations of the ADA, Aubrey has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

#### COUNT II. VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT/ EMPLOYER'S FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

53. Aubrey re-alleges all allegations contained in paragraphs 1 through 52 above as if fully set forth herein.

54. Aubrey was a qualified individual with a disability under the ADA, 42 USC §12101 et. seq.

55. Defendants failed to reasonably accommodate Aubrey's disability in violation of 42 USC §12101 et. seq.

56. As a result of Defendants' violations of the ADA, Aubrey has been damaged in an amount in excess of the minimum jurisdictional limits of this court.

## COUNT III.  MANDATORY RECOVERY OF ATTORNEY'S FEES AND COSTS

57.Aubrey re-alleges all allegations contained in paragraphs 1 through 57 above as if fully set forth herein.

58.Aubrey is mandatorily entitled to recover her attorney's fees and costs pursuant to the provisions of the ADA.

## IV.PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Phyllis Aubrey, respectfully prays that she be awarded the following relief and all other relief to which she may be entitled against the Defendant, Logistics and Technology Services, Inc. and Defendant, Logistics Solutions Group, Inc., jointly and severally:

A.Trial by jury;

B.Judgment against Defendants, jointly and severally, on all claims asserted herein;

C.Compensatory and actual damages including but not limited to past and future lost wages and past and future lost benefits;

D.Compensatory damages, including but not limited to emotional distress, mental anguish, humiliation and embarrassment;

E.All statutory remedies provided by the ADA;

F.Equitable relief in the form of reinstatement, promotion and/or front pay;

G.Punitive damages to punish and deter similar future unlawful conduct;

H.An award of statutory attorney fees, expert witness fees, costs and expenses;

I.Statutory interest on all monetary damage awards, verdicts, or judgments; and

J.All other and additional relief to which Aubrey may be entitled.

Respectfully submitted,

THE ZOPPOTH LAW FIRM


/s/ Bradley S. Zoppoth
Bradley S. Zoppoth
601 W. Main Street, Suite 500
Louisville, KY  40202
(502) 568-8884
bsz@zoplaw.com
*Counsel for the Plaintiff, Phyllis Aubrey*

9